Please the court. Again, my name is Daniel Ellis. I'm with the Federal Public Defender's Office and I represent Mr. Stanbridge on this appeal. He raises one issue and that is with respect to whether the evidence was lawfully obtained during the traffic stop. That evidence was the sole basis for his conviction. The traffic stop was not a lawful traffic stop because the turn signal, as the video evidence shows in this case, which was Government Exhibit 1, not to mention there was a finding by the district court, and that's at appendix page 105. My client had his turn signal on when he moved from the driving lane, the traffic lane that is, into the parking lane. And that's undisputed. So there are actually no lanes anyway on this largely deserted road that he was driving on. When I say lane, I mean in the sense that the road was found on that day. There was one for oncoming traffic and one for traffic in the other direction. To the parallel of the lane where Mr. Stanbridge was driving, there was space to park vehicles. And so that is considered a parking lane as far as I understand Illinois law. And because my client used his turn signal, he complied with Illinois law when he pulled over. And your point, I thought, I mean looking at this Illinois statute, it uses the word appropriate a couple of times in terms of describing the need to signal. But as I understand your argument, there's no hundred foot rule before you pull over to park. There's not. And there's nothing in the statute that says that there is. Rather, there is a 100 foot requirement in the event that you are making a turn, which is commonly understood to be a change in direction, 90 degrees or what have you. But there's very definitely one provision that applies to turns, which is the section 11-804B. And that's the 100 foot requirement. But that isn't required here when there's not a turn. There was a lane change. A lane change requires you to signal, which my client in question did. So we're under D, right? We are. There's no way this can be C, stop or suddenly decrease. That's one of the places where this word appropriate. Appropriate shows up at the final sentence of A, and appropriate shows up in C. D doesn't say anything. It just says you have to use your signal if you're going to change lanes. It has never been argued that C would apply. I don't think the facts as demonstrated by the video would suggest that it does. And, indeed, the officer thought that the lane change itself required the 100 foot continuous turn signal requirement, which he was clearly wrong on. But in any event, C was never a basis for anybody's determination, so I don't think that is really in the ambit of today's case. So what about a different way of looking at this case? You've got the two officers sitting there, as I understand it, in the front seat of their car. And one of them sees him fail to signal when he makes a left turn, which is certainly something covered by B. He doesn't signal. The other one doesn't see him. Why doesn't collective knowledge apply to justify the later traffic stop? I'd point out, first of all, that that alleged failure to signal was never recorded, and so we have one officer. And that officer never provided that information to the other officer. And I guess I'm asking you how important is that? And maybe the government has waived this. I'm not saying that this is necessarily a good theory, but does the collective knowledge doctrine require the officer who sees the illegal left turn to mention to the other officer, oh, look, he just turned without signaling? I believe it does. And we cited a case for that proposition. In any event, I think waiver is applicable here. The government hasn't argued that. The district court clearly determined that the collective knowledge doctrine did not save the government's prosecution on that particular point, and it stated so, not as directly perhaps as we may wish, but there was but one determination for probable cause, and that was the alleged illegal lane change. But, again, under 11-804-D, my client satisfied what the relevant statute was. He used his turn signal before he changed lane. He had it on simultaneously. So the provision that was applicable was satisfied, and there was no probable cause for the officers to make the stop. Just for what it's worth, I read the district court's opinion the same way. She goes through the left turn analysis, comments that Hodges didn't say anything to Bangert, and then she moves on to say Officer Bangert did, however, see Stanbridge pull to the right-hand curb. So I think that's the transition where she's saying, well, forget about that first theory. And I thought it was clear enough. It wasn't clear to the government, but my reading is the same as yours, Your Honor. And that brings us, I think, to the Hyen issue, which the district court delved into and I believe made the determination incorrectly, but the government hasn't argued Hyen in this case, and so we have another waiver problem there. The government has not attempted to defend the district court's application of the Supreme Court decision Hyen, and I think that it would be difficult, if not impossible, to defend the application of Hyen here, given that we have separate statutory requirements for turn signals, where there's a lane change and a turn that has a separate signaling requirement. And very clearly my client was under the requirements of the subprovision D and not B, so the 100-foot rule doesn't apply. And the officers should know the traffic laws better than anybody in this case, and they thought that there was a 100-foot requirement. That is an unreasonable mistake of law, because the law clearly does not have the 100-foot requirement for lane changes. It's hard for me to believe that the officers thought that. I mean, I realize this Quincy is not Chicago, but if there were a 100-foot requirement for parking in Chicago, people would just go around with their blinkers on all the time, because you never know when that parking place is going to pop up. I would hate to be a state court judge who's deciding traffic cases. I don't know when you'd leave the courthouse. It clearly cannot be the way the government has asserted it, the way that the officers are saying that it applies. It simply is an unreasonable mistake of law, and we rely on this Court's Flores decision. And then lastly, we hope not to get to the Rodriguez issue. We would think that it's clear enough that the decision was wrong and the evidence should have been suppressed. But because the district court went into Rodriguez, if there is something that required this case to get remanded, we should have the opportunity to develop a Rodriguez argument because we didn't have a chance to previously. With that, I'll reserve the balance of my time. Okay, thank you. Mr. Baum. Good morning. Jason Baum, on behalf of the government. Mr. Hillis. Mr. Baum, do you really think that you have to signal 100 feet before you pull into a parallel parking place in the state of Illinois? 100 feet, Your Honor, no. I think the before is the key in that sentence. You have to signal before you do something. Well, I watched the video. He did signal before. It's hard for me to tell on the video. I think the officer's testimony in the district court's finding of fact was that it was a simultaneous signal to going to the curb. We have a picture kind of snapped from the video. This is at moment 18-34-01. And it shows his turn signal on, and he's still in the traffic lane. He's not at the curb. So it sure looks like it's before. And there's nobody on the road. I mean, you know, it's not like this is some rush hour down in Quincy. No, that's true. But the traffic laws apply whether or not there's a car on the road or not. The stop sign, I would have to stop at, regardless of if there's another car at the intersection. True. Now, you're relying on D? Yes, Your Honor. I don't see anything in D about flashing your signal when you park. No, D, Your Honor, we point out that you have to indicate your intention to go. Are we talking about D? Yes. It says start from a, you must signal if you start from a parallel park position. It doesn't say when you park. It's very unusual for people to use their turn signal to indicate that they're parking. Right? I believe it also covers changing lanes. And this is clearly a change of lanes, as Your Honor points out. I'm not sure it is a change of lanes. You don't change lanes when you park in a parking spot. You know, I didn't intend to say that. It was just change lanes in common parlance would expect that there are at least two lanes out there and you're changing from one to the other. When you decide to park, whether it's, you know, angle parking or whether it's parallel parking, I'm not sure that this covers that, particularly since it does cover the opposite situation when you start from a parallel parked position. I believe we all agree, too, that subsection A would apply whenever you... Well, you said you were talking about D. And somehow you seem to... Now, it's true. The term parking lane is occasionally used. But changing lanes... People don't think that parking is changing lanes. Changing lanes is you're driving along and you change lanes. There may be a car behind you, right? Parking is a different animal. For example, if there are no parked cars on this side of the road, then you're not going to signal, right? You're going to just turn into the parking spot. And that seems authorized by D, as far as I can tell. I don't see anything to prohibit it. I think our point is twofold. One, what you're getting at is that we believe that the law does require us signaling before you change. Well, where do you see that in D? I think when it says you need to indicate an intention to turn, that you need to indicate the intention to turn prior to making the turn. And turn, I don't mean a 90 degree, but I mean... No, no, but look, you've got two different... Look, you have intention to turn, change lanes, or start from a parallel parked position. Those are three different things. If they meant turn to mean when you park, right? Then they wouldn't need to say start from a parallel parked position. They say if you park, you have to signal. And that's not what anyone would understand to be turning or changing lanes, let alone starting from a parked position. I take your point, and I'm not here to say that this is the most finely crafted Illinois statute. No, I think it's fine. I think you're just misinterpreting it. There's nothing wrong with it. And that might be... It just doesn't cover parking. That might be, but the district... Yeah, that's what it is. It doesn't cover parking, in my opinion. I think that the Illinois law does require a signal prior to parking. It doesn't say it, indeed. Gracious. I think... I understand that you might believe we're misinterpreting it, but I believe the district court was correct in finding that the officer's interpretation was reasonable, that the Illinois traffic laws require a signal in order to help with the safe moving of cars, to indicate an intention to another vehicle. Well, are there some instructions somewhere that tell the police what D means? You're saying D doesn't mean what it says. So you think that the police department would tell the officers that D means you've got a signal when you park. Do they do that? Not that I'm aware of, Your Honor. And I would like to address, Judge Wood, something you brought up earlier. Mr. Stambridge has argued in his reply brief that we mischaracterize the evidence, and that's a serious allegation. And when I read Judge Myerscough's last sentence of her introductory paragraph that says, Because Stambridge's improperly signaled turns gave police probable cause to initiate the traffic stop, his motion should be denied. Then her first sentence of her analysis on page 7, I'm sorry, page 5, the appendix, page 107, she says that Officer Banger and Hodges had probable cause to stop Stambridge for his traffic violations. She uses the plural turns and she uses the plural violations. To me, that's a clear indication that she's finding probable cause was based on plural, more than one. Well, but the problem is then you go on and read the rest of the opinion where she is saying on page 7 that Stambridge's turn was in violation of 11-804, thereby providing probable cause for Officer Hodges to initiate the traffic stop. But then she goes on to take it back. She says, Officer Hodges, however, was not driving the police car and did not initiate the traffic stop. Officer Bangert, as the driver, did, and then she goes on to the part that I was discussing with Mr. Hillis. So I think whether she used the plural in the header or not, she considers it. She doesn't think that's enough. She says Bangert stops because of the signaling issue, and I don't think there's any other way to read this except as to say that it's the signaling issue alone. The government did not argue collective action in the district court. You don't see that developed. She might have wanted to think about it, but it's just not there. So whether that would have supported it or not I don't think is properly here. I believe it is for the following reason. I think the analysis of whether a Fourth Amendment is violated is an objective analysis. Officer Hodges was as much the arresting officer as Officer Bangert. It's factually, there's no question. Completely undeveloped in the district court's opinion. I mean, there's a line of cases about collective knowledge, and it usually assumes that Officer A communicates something to B, but you don't worry that B didn't observe it because A did, and they all work as a team. That's true. Collective knowledge is completely undeveloped in the appellate's brief as well, and we'll Why would he want to develop it? He's saying that the actual ground that she relied on is flawed. He doesn't want to support the government's position. I think if what you're finding is that Judge Myerscoff didn't find probable cause for Officer Hodges' observations, I think her opinion is crystal clear on But that's not what caused the arrest. So if he had been the arresting officer, she would have said, Fine, that's what I understand her to be saying, but he's not. But that would develop a rule where an officer in the front seat passenger, the partner, Officer Hodges It just means you didn't argue it. It wouldn't develop a rule for anything. We don't base precedent on waived arguments. I think the Well, we relied certainly on Officer Hodges' observation of probable cause before the district court. There's no question about that. She seems to reject it, though. And I don't think that's clear, especially when she uses the plural, because of his improper turns and violations. Otherwise, if Officer Hodges had been the one who flipped the switch, and he didn't, that would support probable cause in this case. But because Officer Bangard is the one who flipped the switch, it does not. And I don't think that is a reasonable interpretation of the Fourth Amendment. I think if there's objective probable cause, and here there's no question that the left-hand turn was unsignaled. And 13 seconds later, there was a traffic stop. Officer Hodges shouldn't be under some rule where he has to say, did you see the left-hand turn? Is that why you signaled? I wasn't saying that. But anyway, you need to wrap up, because your time is up. Thank you, Your Honor. Let me ask you, suppose my interpretation of 1104D is correct, and there's no requirement of signaling when you're parking, but that the police officer is misinterpreted. Then how could you prosecute the person? Prosecute for the traffic violation? Right. Whether or not a person could be prosecuted from it, I don't think you could, the short answer. The longer answer is, I think whether a person could ultimately be prosecuted for it is different than if the officer had a reasonable interpretation. No, that can't be right. You can't convict a person for violating a law that he hasn't violated just because a police officer erroneously believes he violated a law. No, you can't. That's correct. You can't convict somebody. Proof beyond a reasonable doubt is different than whether the officer had a reasonable belief that the law required what he thought it did. Judge Myerscough found, and we argue in our brief, that Officer Hodges and Bangert's belief that Stanbridge violated 804 at the curbing was reasonable. But then you have police permitted to arrest people on the basis of erroneous interpretations of the law. People who haven't violated the law nevertheless get arrested because the police don't know what the law is. They aren't told what it is. I believe that's what happened in Heinen, Your Honor. Pardon? I believe that's what happened in Heinen, the Supreme Court case, where he was arrested for that, but ultimately that was not going to support a conviction. But the court nevertheless said it was a reasonable interpretation. That's what Judge Myerscough found here, and we think that is correct. Thank you. All right, thank you very much. Anything further, Mr. Hillis? We are, of course, on the appeal, left with the record as it comes. And there were certain findings that were made, and there were certain findings that weren't. There were arguments that were developed, and there were arguments that weren't. And the government cannot argue Heinen now when it didn't argue it in its brief. And it can't say that the district court's opinion, which I think was fairly clear, quite clear, about the one determination that it did make about probable cause, is correct. Because even if the turn signal had to be on either in the context of a lane change, if this was a lane change, or if it was parking, the turn signal was on. What is definite is a turn signal does not have to be on for 100 feet, as the officer thought that it did. That is an unreasonable mistake of law. In short, the traffic stop was bad, the resulting evidence is fruit of the poisonous tree, and the district court erroneously decided not to suppress the evidence. So we ask this court to make that finding. Thank you. All right, thank you very much. Thanks to both counsel. The case under advisement.